**Sung Hee DAMON; Sang Woo Lee; Seung Woo Lee, Petitioners,**

v.

**John ASHCROFT, Attorney General,\* Respondent.**

No. 02–71677.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2003.

Filed March 11, 2004.

---

\* The court sua sponte changes the docket to reflect that John Ashcroft, Attorney General, is the proper respondent. The Clerk shall amend the docket to reflect the above caption.

Kathy M. Kim, Scott T. Strack, Honolulu, HI, for the petitioners-appellants.

Blair T. O'Connor, Office of Immigration Litigation, Washington, DC, for the respondent-appellee.

Before: RICHARD A. PAEZ, MARSHA S. BERZON, and CARLOS T. BEA, Circuit Judges.

PAEZ, Circuit Judge:

Petitioners, Sung Hee Lee Moon Damon ("Sung Hee"), and her two children, Sang Woo Lee and Seung Woo Lee,[1] seek review of a final order of deportation issued by the Board of Immigration Appeals ("BIA"). In this petition for review, we consider whether substantial evidence supports the determination of the Immigration Judge ("IJ") that Sung Hee's qualifying marriage was not entered into in good faith. Because we conclude that the evidence would compel any reasonable adjudicator to find that Sung Hee's marriage was entered into in good faith, we grant the petition and remand for further proceedings.

---

1. The children's claims are derivative of Sung Hee's and therefore we do not address them separately.

I.

A.

Sung Hee Damon is a citizen of the Republic of Korea.[2] She has two children from an earlier marriage in Korea, Sang Woo Lee and Seung Woo Lee, who are also citizens of Korea. During a visit to her sister and brother-in-law's home in Hawaii, Sung Hee met her second husband, Allen Scott Damon ("Scott"), a United States citizen. After that initial meeting, Scott visited Sung Hee at her sister's house several times a week. Although Sung Hee knew only a little English and Scott knew no Korean, the couple communicated using hand signs and with the help of Sung Hee's sister and brother-in-law.

Two months after he first met Sung Hee, Scott moved into the downstairs bedroom of the house Sung Hee shared with her sister and brother-in-law. Although there was not an acknowledged romantic relationship between Sung Hee and Scott, Sung Hee admitted that even at that time, they "both had kind of little feeling towards, toward each other."

Sung Hee returned to Korea in August, 1989. A few days after she arrived back in Korea, however, her brother-in-law called to tell her that Scott Damon liked her and missed her. He suggested that she come back to Hawaii to see Scott again; and Sung Hee returned to Hawaii in the beginning of November, 1989. Shortly thereafter, Sung Hee and Scott were married in a civil ceremony, in the Old Kona Airport Park on November 9, 1989.

After the marriage, Sung Hee and Scott moved into a bedroom on the ground floor of Sung Hee's sister's house. Sung Hee testified, and presented affidavits from her friend and sister, that she and Scott Damon lived together as husband and wife for one year. Sung Hee and Scott shared a joint bank account at First Hawaiian Bank, until 1990, when Scott withdrew all the money. Sung Hee and Scott paid $350 a month in rent to Sung Hee's sister and also paid her for their telephone charges.[3]

Although there were few problems in the relationship between Sung Hee and Scott Damon, Sung Hee's sister and Scott fought often, primarily about Scott's drinking and marijuana use. Sung Hee's sister also thought Scott should take on more responsibility and disapproved of the fact that he quit his job, leaving Sung Hee to support herself, Scott and her two children, who were at that time still living in Korea.

In December, 1990, Scott Damon left Sung Hee. Although he returned briefly in May, 1991, to attempt a reconciliation with his wife, the Damons' marriage ultimately failed. Sung Hee's children, Sang Woo and Seung Woo, came from Korea to live with Sung Hee in November, 1991. After nearly four years of marriage, Sung Hee and Scott divorced in September, 1993.

---

**2.** The facts recited here are taken from the testimony and documentary evidence that Sung Hee presented at her deportation hearing. Because neither the BIA nor the IJ made an adverse credibility finding against Sung Hee, we accept as true all of her testimony at the hearing. *See Leiva–Montalvo v. INS,* 173 F.3d 749, 750 (9th Cir.1999).

**3.** Sung Hee never paid her sister with checks. Instead, she endorsed her payroll check over to her sister to pay for the rent; and since she shared the telephone bill with her sister and brother-in-law, she paid her share of the bill every month by giving her sister cash. Because of her living arrangement, there was no lease in Sung Hee's name and no documentary evidence that she paid rent or bills relating to her residence with her husband. However, both Sung Hee and her sister testified that the rent and phone bill were paid on a monthly basis.

Sung Hee testified at her deportation hearing that she did not know her ex-husband's whereabouts and he did not attend the hearing. However, Sung Hee did see Scott Damon briefly in 1994. During this meeting Scott gave her a letter, signed and notarized on January 7, 1994, in which Scott attested to the fact that he married Sung Hee in 1989. He further acknowledged in that letter that he and Sung Hee "were married for love and for no other reason." In the letter, he also explained that the marriage did not work out because Sung Hee did not learn English "at a level necessary to develop a long term relationship" and also, because "[i]n retrospect, [he] was also too immature to make a marriage work."

### B.

After Sung Hee married Scott Damon, the Immigration and Naturalization Service ("INS") granted her conditional permanent residence status for a two-year probationary period.[4] *See* the Immigration and Nationality Act ("INA") § 216(a), (d), 8 U.S.C. § 1186a(a), (d) (1996), *recodified as amended at* INA § 216(d)(2)(A), 8 U.S.C. § 1186a(d)(2)(A) (2003). Pursuant to the statutory requirements, Sung Hee and Scott Damon were required to file a joint petition for removal of the conditional status within 90 days prior to the conclusion of the two-year period.[5]

Because it was not possible to file a joint petition, Sung Hee applied to the District Director for a waiver of the joint filing and interview requirements. *See* INA § 216(c)(4), 8 U.S.C. § 1186a(c)(4) (2003).[6] On December 16, 1994, the District Director denied Sung Hee's first application for a waiver and terminated her conditional resident status. On June 19, 1996, the District Director denied Sung Hee's second petition under 8 U.S.C. § 1186a(c)(4) to remove the conditions on her residence status.

The INS served Sung Hee with an Order to Show Cause on March 7, 1997, charging Sung Hee with being subject to deportation under INA § 241(a)(1)(D)(i), 8 U.S.C. § 1251(a)(1)(D)(i) (1994), *recodified as amended at* INA § 237(a)(1)(D)(i), 8 U.S.C. § 1227(a)(1)(D)(i) (2003), as an alien whose status as a conditional permanent resident had terminated. At an August 27, 1997 hearing before the immigration

---

4. In March 2003, the Department of Justice transferred the functions of the INS to the newly created Department of Homeland Security. *See* Homeland Security Act of 2002. Pub.L. No. 107–296 § 471, 116 Stat. 2135 (2002). Because Sung Hee filed her petition for review prior to 2003, we refer to the INS, rather than to the Department of Homeland Security.

5. Within 90 days of the two-year anniversary of the grant of conditional resident status, the alien and the alien's spouse must file with the INS a joint petition to remove the conditions on resident status, accompanied by appropriate documentary evidence to prove that the marriage was not entered into for the purpose of evading the immigration laws of the United States. INA § 216(c)(1), 8 U.S.C. § 1186a(c)(1); 8 C.F.R. § 216.4. If the District Director denies the waiver, as he or she

did for Sung Hee in 1994 and again in 1996, the INS may place the alien into proceedings to remove the alien from the United States. *See* INA §§ 216(b), (c), 237(a)(1)(D)(i), 8 U.S.C. § 1186a(b), (c), 8 U.S.C. § 1227(a)(1)(D)(i) (1994); *see also* 8 C.F.R. § 216.3–216.5.

6. Section 1186a(c)(4), provides that: "The Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien who fails[to file a joint petition to remove the conditions on resident status] if the alien demonstrates that ... the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse) and the alien was not at fault in failing to [file a joint petition]."

judge ("IJ"), Sung Hee sought review of the District Director's decision that her marriage was not entered into in good faith or that extreme hardship would not result if she were deported.

The IJ concluded that the evidence did not support a determination that Sung Hee's marriage to Scott Damon had been entered into in good faith or that she would suffer extreme hardship if deported.[7] The IJ therefore denied Sung Hee's application for a waiver and ordered her deported. *See* 8 C.F.R. § 216.5(f). The IJ did conclude, however, that "[h]ad respondent established a bona fide qualifying marriage, the favorable exercise of discretion would have been warranted, but the respondents failed to meet that first hurdle."

## II.

■■■ Because Sung Hee was placed in deportation proceedings on March 31, 1997 and a final order of deportation was entered on May 15, 2002, her appeal is governed by the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009. *See Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997). Under the transitional rules, judicial review of BIA determinations under § 216 of the INA is governed by § 106(a) of the INA. 8 U.S.C. § 1105a (1994). Former INA § 106(a), later amended by IIRIRA § 309 states that "the petition [for judicial review] shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclu-

sive." INA § 106(a), 8 U.S.C. § 1105a. Because the BIA explicitly adopted the IJ's reasoning, "we review the IJ's opinion as if it were the opinion of the BIA." *Singh–Kaur v. INS*, 183 F.3d 1147, 1150 (9th Cir.1999). Whether Sung Hee entered into the qualifying marriage in good faith is an intrinsically fact-specific question reviewed under the substantial evidence standard. *See Khodagholian v. Ashcroft*, 335 F.3d 1003, 1006 (9th Cir. 2003) (citing *Chavez–Ramirez v. INS*, 792 F.2d 932, 934–35 (9th Cir.1986)). Under this standard, we must affirm unless the evidence is so compelling that no reasonable fact-finder could fail to find the facts were as Sung Hee alleged. *See id.* (citing *Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir.1997)).

## III.

### A.

■■■ In determining whether Sung Hee entered into her marriage in good faith, and not for the purpose of procuring an immigration benefit, the central question is whether she and Scott Damon intended to establish a life together at the time they were married. *Bark v. INS*, 511 F.2d 1200, 1201 (9th Cir.1975). Evidence relevant to their intent includes, but is not limited to, proof that Sung Hee was listed on Scott's insurance policies, property leases, income tax forms or bank accounts, and testimony or other evidence regarding their courtship, wedding ceremony and whether they shared a residence. *Matter of Laureano*, 19 I. & N. Dec. 1, *3 (BIA 1983); *see also* 8 C.F.R. § 216.5(e)(2)(i)-(iv).

---

7. In her petition for review, Sung Hee does not challenge the IJ's determination that she would not suffer extreme hardship if deported and we therefore do not address the IJ's decision on that ground here.

Sung Hee presented substantial evidence that compels a finding that she and Scott Damon intended to establish a life together at the time they were married: They courted several weeks before marrying; they had a wedding ceremony; they shared finances and a joint bank account; and they lived together, sharing a residence and experiences, for over a year. We emphasize, however, that we do not look exclusively at these factors in determining the difficult question of intent. There is no set formula to be applied in determining whether a marriage was entered into in good faith. "The concept of establishing a life as marital partners contains no federal dictate about the kind of life that the partners may choose to lead." *Bark*, 511 F.2d at 1201.

■ In reviewing the evidence presented at Sung Hee's deportation hearing, we confine our inquiry to evidence relevant to the parties' intent at the time of marriage and refrain from imposing our own opinions about what a "real" marriage is or should be or how parties in such a marriage should behave. We have repeatedly emphasized that "[a]n immigration judge's personal conjecture 'cannot be substituted for objective and substantial evidence.' " *Paramasamy v. Ashcroft*, 295 F.3d 1047, 1052 (9th Cir.2002) (quoting *Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir.2000)).

Here, the IJ improperly relied on her own inferences and conjectures. In her order denying Sung Hee's application, the IJ found that "[i]t is implausible that the respondent, a woman with two children, would rush into marriage six days after returning from Korea to the United States with a man she hardly knew, and with whom she did not share a common language or cultural background." The IJ also found it significant that Sung Hee did not take Scott Damon's last name and that the wedding was a non-religious ceremony.

■ We find these reasons not only insufficient but also impermissible bases for the IJ's decision. Rather than judging the objective evidence of intent, the IJ here imposed her own values and suppositions on the interpretation of the facts. *See Bark*, 511 F.2d at 1202. The sole inquiry in determining whether a marriage was entered into in good faith is whether the parties intended to establish a life together at the time of marriage. *See id.* In determining whether such an intent exists, judges must look to objective evidence and refrain from imposing their own norms and subjective standards on the determination. There are many women in today's society who do not take their husband's last name; yet they fully intend to establish a life with their partner. Nor is a religious imprimatur necessary to show that a couple takes their marital vows seriously. Indeed, a brief civil ceremony is all that is required under Hawaiian law. *See* Haw. Rev. St. § 572–1 (2003). Finally, we reject the implication that only those who share a common language and background can form an intent to establish a life together. Much of American culture is itself the product of unions between people of different backgrounds and ethnicities. *See generally* RONALD TAKAKI, STRANGERS FROM A DIFFERENT SHORE (1998).

In sum, the IJ's finding that Sung Hee did not enter into a good faith marriage because she did not have the intent to establish a life together with Scott Damon is not supported by substantial evidence and any reasonable fact finder would be compelled to so conclude.

## B.

Although we conclude that substantial evidence compels a finding that Sung Hee's marriage was entered into in good

faith, we must remand to the BIA to determine whether Sung Hee should be granted a discretionary waiver under INA § 216(c)(4), 8 U.S.C. § 1186a(c)(4). This is a decision that is left to the discretion of the Attorney General. We note, however, that in explaining her decision, the IJ opined that "[a] favorable exercise of discretion would have been warranted," had Sung Hee established that her marriage was entered into in good faith. Accordingly, we remand for further proceedings consistent with the views expressed in this opinion.

PETITION GRANTED AND REMANDED.