# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3911

_____

Igor Alexeyevich Suvorov,                *
                                          *
    Petitioner,       *
                                          *
                                          * On Appeal from the Board of
  v.                            * Immigration Appeals.
                                          *
Alberto R. Gonzales[1], Attorney General, *
                                          *
    Respondent.       *

_____

Submitted: November 18, 2005
Filed: March 28, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

BEAM, Circuit Judge.

  Igor Suvorov filed a petition for review from the Board of Immigration Appeals' (BIA) affirmance of the Immigration Judge's (IJ) decision denying Suvorov's waiver of inadmissibility request under section 216(c)(4)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. §1186a(c)(4)(B). Suvorov's request under section 216(c)(4)(B) would have waived the requirement that he and Jeana Lindell file a joint petition to remove the conditional basis of his permanent residence status. The IJ

_____

[1]Alberto R. Gonzales, the current Attorney General of the United States, is substituted as respondent pursuant to Federal Rule of Appellate Procedure 43(c)(2).

denied Suvorov's request, determining that Suvorov did not enter into the marriage in good faith. In its affirmance, the BIA entered a final order of removal.

Deportability is not at issue in this case; all parties concede that Suvorov is deportable. The issue is whether Suvorov qualifies for relief from removal, specifically whether there is a "good faith" basis for a waiver of the joint filing requirement. Our analysis requires us to review the IJ's credibility determinations. However, the government questions our jurisdiction to reach the merits of Suvorov's claim. We dismiss Suvorov's petition.

## I.    BACKGROUND

At the time of his hearing Suvorov was a forty-three-year-old divorced native and citizen of Russia who entered the United States on May 27, 1990, as a non-immigrant fiancé. He married Jeana Lindell on August 18, 1990, in Illinois and became a permanent resident on a conditional basis on December 24, 1990.[2] The two separated on March 21, 1991, and divorced on August 5, 1991, before the two-year period of conditional residence expired under 8 U.S.C. § 1186a. Suvorov and Lindell did not jointly petition the Attorney General for removal of the conditions on

---

[2]Marriage of an alien to a United States citizen entitles an alien to obtain conditional permanent resident status. 8 U.S.C. § 1186a(a)(1).

Suvorov's status.[3]  Suvorov's conditional status was terminated on May 5, 1993, and deportation proceedings began shortly thereafter.

The IJ's thorough fifty-eight page opinion highlights the testimony and exhibits presented in this case.  It reviews the courtship of Suvorov and Lindell as well as the circumstances surrounding their brief marriage.  Testimony was taken in October 1997.  While both sides presented various witnesses who were familiar with the couple, the witnesses that provided the most pertinent testimony, according to the IJ, were Suvorov, Lindell, and Robin Buehring, the daycare provider of a coworker of Suvorov and Lindell.

Suvorov and Lindell first met in Russia in 1985 when Suvorov lived there and Lindell was traveling there on a tour.  She noticed a lapel pin worn by Suvorov displaying the Soviet and American flags and began having conversations with him.[4] They spent about three days together during Lindell's five–week trip that summer. Lindell then made a second trip to Russia in December 1985, spending most of her two-week winter vacation with Suvorov.  In June 1986, Lindell returned to Russia yet again and the parties began to talk about marriage.  Lindell visited again in the

---

[3]Under the INA, the conditions on such status can be removed if "the alien spouse and the petitioning spouse (if not deceased) jointly . . . submit to the Attorney General . . . a petition which requests the removal of such conditional basis."  8 U.S.C. § 1186a(c)(1)(A).  However, the Attorney General, in the Attorney General's discretion, may waive the obligation of a joint filing requirement for an alien and his spouse if (1) the alien's removal would result in extreme hardship, (2) the marriage terminated but was entered into in good faith, or (3) the marriage was entered into in good faith but the citizen spouse either battered or subjected the alien spouse to extreme cruelty.  8 U.S.C. § 1186a(c)(4)(A)-(C).  "The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General."  8 U.S.C. § 1186a(c)(4).

[4]After hearing all of the testimony, the IJ deduced that Suvorov displayed the lapel pin for the sole purpose of effecting the meeting of Americans.

summer of 1987. After that the couple did not have much, if any, contact for about one and one-half years.

Twice Lindell sought to have Suvorov visit her and have him apply for a visitor's visa at the United States Consulate, which he did. Twice his request was denied. Later, with the help of a congressman, they sought a fiancé visa and it was issued. Suvorov arrived in the United States in May 1990 and the two lived in Wisconsin. After their August wedding, the couple resided in Wisconsin Rapids and worked together at a company called CCLS, a group home for developmentally and mentally disabled individuals. Suvorov and Lindell acted as a normal couple, sending out Christmas cards, celebrating birthdays and socializing as a couple. There was also evidence that Lindell suffered from depression, which required medication. Further, there was conflicting testimony about whether the couple ever consummated their relationship. Evidence of other problems that might have existed was presented including Suvorov's alleged carousing and the occurrence of arguments between them.

Twenty-one-year-old Barb Lewis was a supervisor at CCLS and knew both Suvorov and Lindell. In March 1991, Lindell received a phone call from Buehring, a woman that Lindell did not know, but who cared for Barb Lewis's young son. Among other things, Buehring informed Lindell that Suvorov had copied parts of Lindell's diary and provided them to Lewis and other colleagues of Lindell. Buehring further told Lindell that Suvorov and Lewis had relations and that Suvorov actually had plans to leave Lindell on June 6, 1991, the date upon which Suvorov supposedly believed he would receive permanent status. She said he then planned to move to New York City with Lewis. Buehring told Lindell that Suvorov only married Lindell for the green card. She further revealed to Lindell that Suvorov's father was not dead, as Suvorov had told Lindell during their courtship, but rather that he had a stepfather and that Suvorov never knew his biological father. In fact, during their courtship, Suvorov had told Lindell that his father was ill and had been denied medical

treatment due to Suvorov's relationship with an American. The week that she received Buehring's phone call Lindell packed up her belongings and left Suvorov. Their divorce was final in August of that year.

Buehring testified that Suvorov asked Lewis to look through the diary to find damaging information about Lindell to show that Lindell was crazy. Suvorov testified that he ultimately had a sexual relationship with Lewis but that they were only friends until the time that Lindell left him. Later, he also discussed marriage with Lewis but no formal plans were made.

In his July 7, 2003, order, the IJ held that he had no reason to discredit the testimony of Lindell and Buehring. He determined that Lindell entered the marriage in good faith and could find no motivation for Buehring to fabricate the information she provided. The IJ discredited Suvorov's testimony, noting that Suvorov's story to Lindell about the identity and death of his father was "an extremely serious lie," a matter that caused the IJ concern. The IJ also questioned Suvorov's credibility given his behavior in stealing Lindell's diary to, purportedly, find evidence that Lindell was crazy and to publish excerpts to others, a total violation of Lindell's trust. And, the IJ noted that Suvorov began a sexual relationship with Lewis, possibly even the day after Lindell moved out, and referenced indications in the record that Suvorov hoped to immigrate to the United States from the time he met Lindell. "The timing of all these events calls into serious question whether or not [Suvorov] was still interested in maintaining his relationship with his wife at the time immediately preceding her leaving him." In fact, Suvorov's behavior in February and March of 1991 was the deciding factor in the IJ's determination. The IJ might have granted the waiver except that this behavior called into question Suvorov's intentions regarding the marriage.

Nearly six years following the hearing in this matter, after weighing the conflicting testimony and other evidence, the IJ denied Suvorov's application for a

waiver of the requirement of filing a joint petition and declared Suvorov deportable.[5] Finding no clear error in the IJ's credibility determinations and his determinations regarding the validity of the marriage, the BIA affirmed the IJ. This request for review followed.

## II.    DISCUSSION

We first address the jurisdictional issue raised for the first time by the government just prior to oral argument in this case. Pursuant to Federal Rule of Appellate Procedure 28(j), the government sent the court a letter stating that the REAL ID Act (RIDA), enacted in 2005, provides, inter alia, that a "petition for review filed under former section 106(a) of the [INA] . . . shall be treated as if it had been filed as a petition for review under [8 U.S.C. § 1252], as amended by this section." Section 1252 (a)(2)(B)(ii) states:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.[6]

Accordingly, the government argues that we lack jurisdiction because Suvorov seeks review of the discretionary determination made by the IJ to deny his application for a waiver under 8 U.S.C. § 1186a(c)(4)(B). As we noted earlier, a waiver under section 1186a(c)(4) is solely within the Attorney General's discretion. See ante n. 3.

---

[5]In that same order, the IJ also denied Suvorov's application for suspension of deportation, a decision not before us on appeal.

[6]We use "IJ" or "BIA" as a shorthand for the Attorney General and his designees.

Suvorov responds that we retain jurisdiction in this matter because none of the cases relied upon by the government were decided post-RIDA and we are presented with legal issues in this matter that are still reviewable by this court. Although not stated directly in Suvorov's responsive letter, we presume Suvorov encourages us to exercise jurisdiction over his hardship waiver under 8 U.S.C. § 1252(a)(2)(D), a provision added by RIDA. In this section "Congress amended the INA by restoring jurisdiction in the circuit courts to review 'questions of law' and 'constitutional claims' in a petition for review challenging a removal order." Arellano-Garcia v. Gonzales, 429 F.3d 1183, 1185 (8th Cir. 2005). Specifically, section 1252(a)(2)(D) states:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Suvorov relies upon this court's recent opinion in Loeza-Dominguez v. Gonzales, 428 F.3d 1156 (8th Cir. 2005) for support. In that removal case we exercised jurisdiction under the recently enacted RIDA to consider the legal question of whether the state court conviction at issue met the definition of "child abuse" or "crime of moral turpitude." Id. at 1157.

Suvorov's argument is misplaced. Based on our precedent, we agree with the government and find that we lack jurisdiction to hear Suvorov's appeal. See Ignatova v. Gonzales, 430 F.3d 1209, 1213 (8th Cir. 2005) (denying jurisdiction to review the denial of an application for a hardship waiver). Suvorov argues that the operative legal issue now before us is "the legal interpretation of what constitutes 'good faith' in connection with a waiver petition under [section 1186a]." That, however, is not a legal issue in this case. Whether the qualifying marriage was entered into in good faith by the alien spouse is a discretionary factual determination of the IJ.

Here, the IJ weighed the conflicting testimony and other evidence, and denied Suvorov's application for a waiver. The focus was on an adverse credibility determination. See Ignatova, 430 F.3d at 1213 n.4 (recognizing that although some courts have found jurisdiction to review an eligibility ruling under section 1186a(c)(4)(B) that requires a threshold determination of whether there was a good faith marriage, the focus of Ignatova was on credibility).

We lack jurisdiction to review questions of fact underlying discretionary decisions of the Attorney General, 8 U.S.C. §§ 1186a(c)(4), 1252(a)(2)(B), and are thus without jurisdiction to review the denial of the hardship waiver in this case.

## III.   CONCLUSION

Because we lack jurisdiction, Suvorov's petition is dismissed.

_____