# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1587

_____

Khalid Ibrahimi,                            *
                                            *
              Petitioner,                   *
                                            *   Petition for Review from
       v.                                   *   an Order of the Board of
                                            *   Immigration Appeals.
Eric H. Holder, Jr.,[1]                     *
Attorney General of the United States,      *
                                            *
              Respondent.                   *

_____

Submitted:  December 11, 2008
    Filed:  May 20, 2009

_____

Before MELLOY and BENTON, Circuit Judges, and MAGNUSON,[2] District Judge.

_____

MELLOY, Circuit Judge.

       Khalid Ibrahimi, a Tunisian native and citizen, petitions for review of the decision of the Board of Immigration Appeals ("BIA") to deny him a waiver of the spousal joint-filing requirement for the removal of the conditions on his permanent-

_____

       [1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., is automatically substituted for former Attorney General Michael B. Mukasey as Respondent in this case.

       [2] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

resident status. He claims that the BIA improperly allocated the burden of proof and erroneously determined that he did not merit removal of the conditions regardless of the burden. He further argues that the Immigration Judge ("IJ") acted as a biased arbitrator and erred in admitting certain evidence in violation of his due-process rights. The Government argues that because the ultimate decision to grant the petition to waive the joint-filing requirement is discretionary, we lack jurisdiction to hear this appeal. The Government further contends that because there is no liberty interest in discretionary relief from removal, we have no jurisdiction to consider Ibrahimi's due-process claim. We deny the petition for review.

I.

Permanent-resident status conferred on the basis of a marriage to a U.S. citizen is granted initially on a conditional basis. Id. § 1186a(a)(1). Within ninety days prior to the two-year anniversary of the grant of conditional permanent-resident status, an alien can apply to have the conditional basis removed. Id. § 1186a(c)(3), (d)(2); 8 C.F.R. § 216.4(a)(1). To do so, the alien and U.S.-citizen spouse must file an I-751 Petition to Remove Conditions on Residence and appear at an interview with U.S. Citizenship and Immigration Services ("USCIS"). 8 U.S.C. § 1186a(c)(3); 8 C.F.R. § 216.4(a)(1). If the alien meets these joint-filing requirements, then the agency will remove the conditions on the alien's permanent-resident status. 8 U.S.C. § 1186a(c)(3). In instances where the alien fails to meet the requirements because the qualifying marriage ended prior to the two-year anniversary, however, the alien may seek a discretionary waiver of the joint-filing requirement. Id. § 1186a(c)(4)(B). In order to establish eligibility for this good-faith marriage waiver or "hardship waiver," the alien must first show that he or she entered into a "qualifying marriage . . . in good faith." Id. Only after the alien has established this fact does the Attorney General possess the discretion to grant the waiver and remove the conditional basis of the permanent-resident status. Id. If the Government denies the waiver application, the alien is entitled to seek review of the denial before the IJ during the course of removal proceedings. 8 C.F.R. § 216.5(f).

-2-

Khalid Ibrahimi entered the United States as a non-immigrant visitor for pleasure in May 2000. Ibrahimi married a U.S. citizen, Nicole Kohring, on January 17, 2002. Four months later, he applied for adjustment of status to that of a legal permanent resident based on his marriage. USCIS granted Ibrahimi conditional permanent residence as Kohring's spouse in May 2003. In April 2004, however, Kohring and Ibrahimi divorced, and within the month, USCIS notified Ibrahimi of its intent to terminate his conditional permanent-resident status because of the divorce. Ibrahimi filed a petition seeking to waive the joint-filing requirement and have the conditions removed. USCIS denied the petition and terminated his conditional permanent-resident status in August 2004. The agency then initiated removal proceedings against him. During those proceedings, the IJ found Ibrahimi removable under 8 U.S.C. § 1227(a)(1)(D)(i) because USCIS had terminated his conditional permanent-resident status after the divorce.

Following the IJ's removability determination, Ibrahimi renewed his petition for a good-faith-marriage waiver under § 1186a(c)(4). The IJ continued the hearing to allow the parties to gather evidence. During that proceeding, the IJ heard lengthy testimony on the nature of Ibrahimi's relationship with Kohring in order to determine whether he had entered into his marriage with her in good faith. Ibrahimi; Kohring; Ibrahimi's former girlfriend, Stacey Urgento; two of Ibrahimi's co-workers; and a USCIS agent were witnesses during the proceeding adjudicating Ibrahimi's waiver petition. During these proceedings, the IJ explicitly found Urgento's testimony credible but called into question Kohring's credibility by referring to portions of her testimony as "outlandish." The IJ, however, never made an explicit credibility finding as to Ibrahimi's testimony. In the absence of "an explicit adverse credibility finding," we are obligated to accept as true a witness's testimony. Mohamed v. Gonzales, 477 F.3d 522, 527 (8th Cir. 2007) ("An implicit credibility finding made in passing does not suffice."); accord Nguyen v. Mukasey, 522 F.3d 853, 855 n.2 (8th Cir. 2008) (per curiam). Thus, to the extent that Ibrahimi's testimony does not conflict with

Urgento's statements, the evidence in the administrative record indicates the following.

Upon his arrival in the United States in 2000, Ibrahimi began dating Urgento, a U.S. citizen. They were in a relationship for more than a year, eventually co-habitating in Washington, D.C. While the two discussed marriage at various points during their relationship, often at Ibrahimi's urging, Urgento ended their relationship in December 2001 following a holiday visit with her family. Urgento admitted that her family did not approve of her relationship with Ibrahimi and noted that fact as part of the reason they separated. During her testimony about her relationship with Ibrahimi, she said that, at various points during their courtship, he had threatened to leave her and marry another women if she refused to marry him.

Three days after Ibrahimi and Urgento's break-up, on December 28, 2001, Ibrahimi met Kohring at a bar. They had consensual sexual relations that evening. Within two days, Kohring and Ibrahimi decided to move in with one another, and they began discussing marriage immediately. Less than one month later, on January 17, 2002, they were married in a civil ceremony at a courthouse. Ibrahimi testified that he married Kohring out of love and that they had fallen in "crazy love . . . instantly." Ibrahimi denied marrying Kohring for immigration benefits, citing the fact that at the time of his marriage to Kohring, his D.C. employer had submitted a labor certification for him that would have made him eligible for adjustment of status on those grounds. Ibrahimi testified that he believed that he would be allowed to stay in the country based on his employment.

Immediately after the wedding, Kohring and Ibrahimi lived together with other roommates. Once Kohring's lease ended, in April 2002, Ibrahimi and Kohring co-signed a lease and moved into their own apartment. Kohring became pregnant with their child and moved from Washington, D.C., to St. Louis to be closer to her family in November 2002. Ibrahimi followed two weeks later. In St. Louis, they again lived together as husband and wife, establishing a joint bank account into which they

deposited both of their paychecks.  Kohring listed Ibrahimi as her health-insurance dependent.

On May 10, 2003, USCIS adjusted Ibrahimi's status to that of a conditional legal-permanent resident.  Ibrahimi and Kohring's relationship was rocky, however, and they separated in July 2003, a few months after their son was born and two months following Ibrahimi's adjustment of status.  Kohring moved out of their marital residence, and their divorce became final on April 19, 2004.  In all, Kohring and Ibrahimi were married approximately two years and two months, and they were separated for almost eleven months during that period.

The IJ relied extensively on Urgento's testimony and found it "incredulous" that the circumstances surrounding Ibrahimi's marriage to Kohring could support a determination that he had entered into his marriage in good faith.  In addition to details about her relationship with Ibrahimi, Urgento had testified that Ibrahimi had called her a week before his wedding to Kohring and had attempted to reconcile their relationship, seeking to marry Urgento instead.  Despite the fact that Ibrahimi was involved in a long-term relationship with Urgento immediately prior to meeting Kohring, Kohring was unaware of that relationship until after Ibrahimi and Kohring had separated.  Ibrahimi claimed that he had kept the relationship a secret so that Kohring would not become jealous and leave him.  Urgento had known about Ibrahimi's marriage to Kohring, however.  In fact, Urgento had heard about it from Ibrahimi's family in February 2002 when they erroneously called to congratulate her on her marriage to Ibrahimi.  After this phone call, Urgento sent a facsimile to USCIS informing the agency that Ibrahimi was in the country illegally.

The BIA did not explicitly adopt the IJ's decision but affirmed its finding that the marriage was not a good-faith marriage and its denial of a waiver of the joint-filing requirement.  As support for its conclusion, the BIA cited to the timing of Ibrahimi's break-up with Urgento and his marriage to Kohring, the fact that Ibrahimi had threatened to leave Urgento if she did not marry him, and the phone call that Ibrahimi

made to Urgento just prior to the wedding seeking reconciliation. The BIA noted that the evidence of their joint residences, joint bank accounts, joint health insurance, and family life was "of limited probative value in light of the testimony [from Urgento] regarding the respondent's motivation at the time of his marriage." Accordingly, the BIA found that the IJ properly denied Ibrahimi's application for a good-faith-marriage waiver.[3]

## II.

### A. Burden of Proof to Show Good-Faith Marriage

During the adjudication of Ibrahimi's waiver of the joint-filing requirement, the IJ placed the burden of proof "on the Department" to show that Ibrahimi entered his marriage in good faith. On appeal, the BIA reallocated the burden of proof, requiring that Ibrahimi be the one to establish that he entered a good-faith marriage. Ibrahimi first argues that the BIA erred in placing the burden of proof on him and that the IJ was correct in stating that the Department bore the burden. Ibrahimi further claims

---

[3] The Government argues that the BIA's denial of the waiver was alternatively premised on an unfavorable exercise of discretion. We disagree. While the IJ indicated Ibrahimi did not merit a favorable exercise of discretion, the BIA neither explicitly adopted nor impliedly addressed this finding. We resist the Government's contention that the fact that the BIA "found no reason to disturb the Immigration Judge's denial of the . . . request for a waiver" and found that the IJ "properly denied the . . . application for waiver" necessarily incorporates the IJ's decision regarding the exercise of discretion. Rather, the BIA's decision was solely premised on the fact that Ibrahimi was ineligible for the waiver because he failed to prove that he had entered into his marriage in good faith. "Because the BIA did not consider the IJ's alternative grounds for denying relief, those issues are not properly before us." Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006) (citing INS v. Ventura, 537 U.S. 12 (2002)); Falaja v. Gonzales, 418 F.3d 889, 899 n.6 (8th Cir. 2005) ("Because the BIA did not address the IJ's extraneous ruling denying discretionary relief, we have no jurisdiction to consider the matter." (citing Ventura, 537 U.S. at 16)).

that even if the IJ improperly allocated the burden of proof, the BIA erred in reallocating that burden without comment. This court reviews "an agency's legal determinations de novo, according substantial deference to the agency's interpretation of the statutes and regulations it administers." Llapa-Sinchi v. Mukasey, 520 F.3d 897, 899 (8th Cir. 2008) (quotation omitted).

Section 1186a(c) governs petitions to remove the conditions on permanent-resident status and waive the joint-filing requirement. Contrary to Ibrahimi's argument, and in line with the BIA's decision, this section places the burden of proof to establish a good-faith marriage on the alien when that alien files a petition to remove the conditional basis of his permanent resident status:

> The Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien who fails to meet the requirements of paragraph (1) *if the alien demonstrates* . . . the qualifying marriage was entered into in good faith by the alien spouse . . . ."

8 U.S.C. § 1186a(4) (emphasis added); see also Nyonzele v. INS, 83 F.3d 975, 980 (8th Cir. 1996); Roos v. U.S. Attorney Gen., 167 F. App'x 752, 754–55 (11th Cir. 2006) (unpublished); Gaur v. Gonzales, 124 F. App'x 738, 740 (3d Cir. 2005) (unpublished).[4] The fact that the BIA corrected the IJ's erroneous allocation of the burden of proof without comment does not require a remand. The BIA had the power to conduct a de novo review of the IJ's legal conclusions pursuant to 8 C.F.R. § 1003.1(d)(3)(ii). It did not, therefore, err when it corrected the IJ's misstep without comment. Cf. De Brown v. Dept. of Justice, 18 F.3d 774, 778 (9th Cir. 1994) (finding no error when the BIA affirmed the IJ's conclusion after applying a different standard

---

[4] The IJ appears to have relied on the language in 8 U.S.C. § 1186a(b). Once an alien files a petition to waive the conditions, however, the governing statutory provision is 8 U.S.C. § 1186a(c).

of proof than the IJ). We conclude that the BIA properly placed the burden on Ibrahimi to show that he entered his marriage in good faith.

B. Jurisdiction to Determine Good-Faith Marriage

Ibrahimi further contests the BIA's denial of his good-faith-marriage waiver. Because the ultimate determination as to whether to grant a waiver is discretionary, the Government argues that we lack jurisdiction to hear Ibrahimi's appeal. See 8 U.S.C. § 1252(a)(2)(B) (outlining the limitations on this court's jurisdiction to hear denials of discretionary relief). Ibrahimi counters that his case only involves the agency's determination as to his statutory eligibility for the waiver—i.e., whether he entered his marriage in "good faith." Ibrahimi argues that since eligibility for discretionary relief is a question of law or the application of law to facts, this court retains jurisdiction to review the decision to deny the waiver on the basis that he failed to establish a good-faith marriage. We agree with Ibrahimi.

In the context of good-faith-marriage waivers, our jurisdiction depends on the nature of the BIA's decision under § 1186a(c)(4) . This court has held that "[w]e have jurisdiction to consider what the legal standard is for the good-faith determination and to review the threshold determination of whether the credited evidence meets the good-faith standard." Nguyen, 522 F.3d at 855; cf. Guled v. Mukasey, 515 F.3d 872, 880 (8th Cir. 2008) ("We may review the non-discretionary determinations underlying [eligibility for cancellation of removal], such as the predicate legal question whether the IJ properly applied the law to the facts in determining an individual's eligibility."). While a good-faith-marriage determination certainly involves some fact-finding, ultimately the conclusion is governed by a legal standard. Because the question of whether a marriage was entered into in good faith is a "predicate legal question" that amounts to a "nondiscretionary determination[] underlying the denial of relief," then, this court has jurisdiction to review whether Ibrahimi met the legal standard necessary to establish his eligibility for the waiver. Nguyen, 522 F.3d at 854–55. As per

Nguyen, our jurisdiction is limited to this legal determination and does not extend to the underlying factual determination.

In an effort to preclude this court from exercising jurisdiction, the Government relies on Suvorov v. Gonzales, 441 F.3d 618 (8th Cir. 2006) and Ignatova v. Gonzales, 430 F.3d 1209 (8th Cir. 2005), two cases where we found jurisdiction lacking. While these cases do discuss jurisdiction in the context of good-faith-marriage waivers, we find them distinguishable. In both Surorov and Ignatova, the agency's denials of good-faith-marriage waivers were premised on purely factual determinations. In each case, an adverse credibility determination drove the agency's conclusion that there was no good-faith marriage. See Nguyen, 522 F.3d at 854 n.2 (discussing Surorov and Ignatova). Congress has explicitly provided that the BIA has "the sole discretion" to determine "what evidence is credible and the weight to be given that evidence" in determining whether a good-faith-marriage waiver is warranted, 8 U.S.C. § 1186a(c)(4), and Nguyen recognized this limitation. Nguyen, 522 F.3d at 854–55. In other words, consistent with the statute's language, Suvorov and Ignatova prevent us from exercising jurisdiction to pass upon the credibility and weight of the evidence that a petitioner has presented in an attempt to establish eligibility for a waiver of the joint-filing requirement. Id.; see also Ebrahim v. Gonzalez, 471 F.3d 880, 883–84 (8th Cir. 2006) ("Here, the IJ, as in Suvorov, determined that [the alien] was not eligible for waiver after finding [the alien and his former wife] were not credible and, therefore, did not enter into the marriage in good faith. Therefore, following Suvorov, we lack jurisdiction to review the denial of the waiver."). These cases do not prevent us from asserting jurisdiction to make a determination of what constitutes a good-faith marriage and whether the credited evidence meets that standard.

In this case, the BIA's denial of Ibrahimi's waiver was not premised upon a finding that the evidence of the bona fide nature of his marriage was incredible. In fact, as discussed above, the agency did not make a specific credibility finding with regard to his testimony or his evidence at all, with the exception of expressly crediting

Urgento's testimony. Ibrahimi is, instead, asking this court to review whether the BIA properly applied the law to the facts in concluding that his credited evidence failed to meet the good-faith legal standard and thus properly prevented him from establishing his eligibility for discretionary relief under § 1186a(c)(4)(B). We have jurisdiction to consider that question. See 8 U.S.C. § 1252(a)(2)(D) (preserving jurisdiction over "constitutional claims or questions of law"); Nguyen, 522 F.3d at 855.

C. Good-Faith-Marriage Determination

Having established that jurisdiction is proper, we review the agency's conclusion of law—that Ibrahimi's credited evidence did not satisfy the legal standard of what constitutes a good-faith marriage—de novo. See Iyamba v. INS, 244 F.3d 606, 607–08 (8th Cir. 2001) (per curiam). In determining whether an alien has entered into a good-faith marriage, "the central question is whether [the couple] intended to establish a life together at the time they were married." Damon v. Ashcroft, 360 F.3d 1084, 1088 (9th Cir. 2004); Cho v. Gonzales, 404 F.3d 96, 102 (1st Cir. 2005); see also Matter of Laureano, 19 I. & N. Dec. 1, *3 (BIA 1983). Criteria that the agency may consider to gauge this intent and the "commitment of both parties to the marital relationship" is set forth in the regulations. 8 C.F.R. § 1216.5(e)(2); see also Nyonzele v. INS, 83 F.3d 975, 980 (8th Cir. 1996). This evidence may include "(i) [d]ocumentation relating to the degree to which the financial assets and liabilities of the parties were combined; (ii) [d]ocumentation concerning the length of time during which the parties cohabited after the marriage and after the alien obtained permanent residence; (iii) [b]irth certificates of children born to the marriage; and (iv) [o]ther evidence deemed pertinent." 8 C.F.R. § 216.5(e)(2).

The credited evidence supports the BIA's decision that Ibrahimi did not enter his marriage in good faith.[5] The BIA relied heavily on the timing and length of

_____

[5] Ibrahimi correctly points out that other credited evidence supports his argument that the marriage was entered into in good-faith. Nothing requires that the BIA rest its decision on the credited evidence that Ibrahimi highlights, however.

-10-

Kohring and Ibrahimi's courtship in combination with the testimony of Ibrahimi's former girlfriend, Urgento, in reaching its conclusion. While Kohring's and Ibrahimi's courtship was short, this alone does not require a conclusion that the relationship was not bona fide. See, e.g., Damon, 360 F.3d at 1089 (courtship of "several weeks"). There is other evidence in the record, however, to indicate that at the time of the marriage Ibrahimi was not committed to the marital relationship. Ibrahimi had just ended a long-term relationship with Urgento during which they had discussed marriage. Urgento's credited testimony revealed that Ibrahimi had threatened to leave her and find someone else to marry if Urgento refused to marry him, which she ultimately did. Urgento's credited testimony further revealed that Ibrahimi called her "within the first two weeks of January" 2002 and that "[t]he nature of the conversation was asking [her] to reconsider getting married." This call took place, at most, one week prior to Ibrahimi's marriage to Kohring.

Thus, while the record contains evidence of a shared life together, the agency's determination that the evidence of a shared life was "of limited probative value in light of the testimony regarding [Ibrahimi's] motivation at the time of his marriage" is conclusive. We again note that § 1186a(c)(4) explicitly provides that "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General." 8 U.S.C. § 1186a(c)(4). We are not at liberty then to reevaluate the relative strength of the evidence of Ibrahimi's shared life compared to Urgento's testimony regarding Ibrahimi's intentions. See Nyonzele, 83 F.3d at 980–81 ("We are not at liberty to reweigh the evidence."). And there is no claim that the BIA substituted its personal conjecture or inference for reliable and credited evidence. See Damon, 360 F.3d at 1089. In conclusion, the credited evidence in the record supports the BIA's conclusion that Ibrahimi did not intend to establish a marital life with Kohring at the time he entered the marriage. We thus find that the BIA did not err by concluding that Ibrahimi was ineligible for a good-faith-marriage waiver because he did not meet the legal standard of what constitutes a good-faith marriage.

## III.

Ibrahimi further argues that various aspects of the adjudication of his good-faith-waiver petition violated due process. He claims that the IJ acted as a biased arbiter and erred in admitting certain evidence. The Government argues that the alleged violations do not go to the determination of removability but rather to the disposition of the discretionary good-faith-waiver petition. As a result, the Government posits that Ibrahimi has no constitutionally protected liberty interest, and, without a liberty interest, he has no right to due process. Because we agree that Ibrahimi's appeal to the Attorney General's discretion for relief from removal does not create a right sufficient for a liberty interest, we find there is no due-process right at stake, and we are without jurisdiction to hear these claims.

Aliens have a general right to due process in removal proceedings, Reno v. Flores, 507 U.S. 292, 306 (1993), and due process mandates that "removal hearings be fundamentally fair." Al Khouri v. Ashcroft, 362 F.3d 461, 464 (8th Cir. 2004). In order to be fundamentally fair, we have stated that the "arbiter presiding over the hearing must be neutral and the immigrant must be given the opportunity to fairly present evidence, offer arguments, and develop the record." Tun v. Gonzales, 485 F.3d 1014, 1025 (8th Cir. 2007). As a threshold requirement to any due-process claim, however, the alien must show that he or she has a protected property or liberty interest. Garcia-Mateo v. Keisler, 503 F.3d 698, 700 (8th Cir. 2007); Etchu-Njang v. Gonzales, 403 F.3d 577, 585 (8th Cir. 2005). And we have repeatedly held that "there is no constitutionally protected liberty interest in discretionary relief from removal." Garcia-Mateo, 503 F.3d at 700 (voluntary departure); Etchu-Njang, 403 F.3d at 585 (cancellation of removal); Jamieson v. Gonzales, 424 F.3d 765, 768 (8th Cir. 2005) (adjustment of status); Nativi-Gomez v. Ashcroft, 344 F.3d 805, 808–09 (8th Cir. 2003) (adjustment of status). In those circumstances, because there is no liberty interest, the Due Process Clause does not apply, and, because there is no constitutional

question or question of law, we lack jurisdiction to hear the claims under 8 U.S.C. § 1252(a)(2)(D).

Ibrahimi was placed in removal proceedings under 8 U.S.C. § 1227(a)(1)(D)(i), which provides that "[a]ny alien with permanent resident status on a conditional basis . . . who has had such status terminated . . . is deportable." Thus, to establish removability, the Government was only required to show by a preponderance of the evidence that Ibrahimi and his wife were no longer married. Id. § 1186a(b)(1)(a)(ii). The parties do not contest that this was properly established, and Ibrahimi does not argue that the proceedings during which the Government established his removability were in any way constitutionally flawed. Instead, Ibrahimi argues that the IJ violated his rights during the hearing on whether he merited a good-faith waiver, i.e., discretionary relief from removal. As discussed above, an appeal to the agency's discretion is not a substantive entitlement sufficient to support a finding of a liberty interest. Guled, 515 F.3d at 880 (refusing to assert jurisdiction over a due-process claim in a cancellation-of-removal proceeding when the petitioner claimed that the IJ allowed a witness to testify without providing proper notice). Nor does Ibrahimi have a constitutionally protected interest in eligibility for discretionary relief. Garcia-Mateo, 503 F.3d at 700; see also Nguyen v. Dist. Dir., Bureau of Immigration and Customs Enforcement, 400 F.3d 255, 259 (5th Cir. 2005) ("[N]either relief from removal under discretionary [§ 212(c)] waiver nor eligibility for such discretionary relief is entitled to due process protection." (citation and emphasis omitted)).

In conclusion, because Ibrahimi does not have a liberty interest in obtaining discretionary relief from removal, he has no due-process right, and we are without jurisdiction to consider his argument.

IV.

Having considered all of Ibrahimi's claims, for the foregoing reasons, we deny his petition for review.

_____