# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3519

_____

Yitbarek Yohannes,          *
                                    *
        Petitioner,         *
                                    * Petition for Review
        v.                     * of an Order of the
                                    * Board of Immigration Appeals.
Eric H. Holder, Jr.,         *
Attorney General of the United States,     *
                                    *
        Respondent.       *

_____

Submitted: September 22, 2009
Filed: November 5, 2009 (**Corrected 11/6/09**)

_____

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Yitbarek Yohannes, an Ethiopian native and citizen, petitions for review of a Board of Immigration Appeals (BIA) decision denying him a waiver of the spousal joint-filing requirement for removal of the conditions on his permanent resident status. The government has moved to dismiss the petition, arguing that we lack jurisdiction to hear an appeal of the BIA's discretionary denial of relief. We deny both the motion to dismiss and the petition for review.

## I.

Yohannes entered the United States on a student visa in December 1987. As a result of his April 1989 marriage to Lailah Sharief, a United States citizen, Yohannes's status was adjusted to that of a conditional permanent resident. To remove the conditions on his status, Yohannes and Sharief were required to file a joint petition within ninety days of the two-year anniversary of the grant of conditional permanent residency and appear together at a personal interview. 8 U.S.C. § 1186a(c)(3). Yohannes failed to satisfy this requirement. On March 18, 2002, the Immigration and Naturalization Services terminated Yohannes's status and subsequently charged him as removable.

Yohannes filed a petition seeking a waiver of the spousal joint-filing requirement under 8 U.S.C. § 1186a(c)(4), which provides the Attorney General the discretion to grant a waiver if an alien demonstrates that removal would cause extreme hardship or that the qualifying marriage was entered in good faith and the alien is not at fault in failing to meet the joint-filing requirement. The government denied the waiver, and Yohannes sought review of the decision during removal proceedings.

At a hearing before an Immigration Judge (IJ), Yohannes testified that he met Sharief in 1988, shortly after he arrived in the United States to attend college. Sharief was a divorced single mother with three children. Yohannes testified that their relationship developed after he hired her to type his school assignments. He testified that he was hesitant to tell his Christian family that he intended to marry Sharief—a reluctance due in part to the fact that she was a Muslim and to Yohannes's knowledge that his relatives would disapprove of her religious beliefs.

Yohannes testified that the relationship began deteriorating about one year after their 1989 marriage, a rift he claimed was due to Sharief's dishonest behavior and secret drug use. Within the first few years of the marriage, Sharief conceived two

children with another man, and Yohannes began living with another woman, Jill Wade, with whom he fathered a child in 1994. Despite Yohannes's estrangement from Sharief, they did not divorce until September 2003. Yohannes attributed this delay to the fact that he still cared for Sharief and wanted to support her. Yohannes also testified that removal would cause him extreme hardship because he would be separated from the child that he had fathered with Wade.

Aside from these basic details, however, Yohannes's testimony was vague and often inconsistent. Yohannes could not remember the date of his marriage, final separation, or divorce. He was unable to recall Sharief's birthday or how she spelled her first name, and he gave inconsistent answers when queried about the timing of the children born during the marriage. Yohannes testified that he and Sharief had shared a checking and savings account, but he could not remember the name of the bank.

Two witnesses testified on Yohannes's behalf. Mulugheta Teferi, Yohannes's cousin, testified that he had a close relationship with Yohannes and that he had counseled the couple before and after their marriage. Teferi remembered few specific details about the marriage, and parts of his testimony were inconsistent with Yohannes's account. Teferi did not know, for example, that Yohannes originally came to the United States to attend college. He also did not know that Sharief was a Muslim, and he testified that the issue of her religion never came up with the family. Teferi was uncertain about the number of children Sharief had before the marriage and how many children she gave birth to before separating from Yohannes. He testified that the relationship permanently ended in 1992, contradicting an earlier affidavit in which he stated that he continued to counsel the couple until 1994.

Mengesha Yohannes (Mengesha), Yohannes's brother, provided similarly vague testimony. Although he asserted that Yohannes had married in good faith, he could not recall the approximate date of the wedding, whether Sharief had two or three children before the marriage, what the children's names were, or what the couple's

initial home was like. Mengesha was uncertain about the approximate time when Sharief and Yohannes began to experience marital difficulties, and he could not say when their relationship finally ended.

In addition to the foregoing testimony, Yohannes submitted an undated affidavit from Sharief, in which she claims that she married Yohannes in good faith. The body of the affidavit consists of a single paragraph stating that the marriage fell apart because of Sharief's struggles with bipolar disorder and multiple personality disorder. The record also contains joint tax returns from 1989 and 1990. The tax returns, however, list a post office box as a home address, and several of the accompanying W-2 forms show separate addresses for Yohannes and Sharief. Yohannes did not submit any account statements, photographs, or other documentary evidence of a shared life with Sharief. He testified that he left all of his possessions with Sharief when he moved out of the house and that the photos and documents have since disappeared.

Concluding that Yohannes had established neither a good faith marriage nor that his removal would cause extreme hardship, the IJ denied the request for a waiver. The IJ found that the hearing testimony was of little probative value, observing that there were "numerous inconsistencies" in Yohannes's statements and that the other witnesses did not appear to have a close relationship with Yohannes and Sharief. The IJ also expressed skepticism about the lack of documentary evidence, given that Yohannes had eight months to prepare for his hearing. The BIA adopted and affirmed the IJ's decision, rejecting Yohannes's arguments that the inconsistencies in his testimony were minor and that the IJ failed to separately consider whether he merited a waiver because his removal would cause extreme hardship.

II.

We turn first to Yohannes's argument that the BIA erred in concluding that he failed to demonstrate eligibility for the good faith marriage waiver. Because the BIA

-4-

adopted and affirmed the IJ's decision with additional comments, we review both decisions. Ngengwe v. Mukasey, 543 F.3d 1029, 1032 (8th Cir. 2008).

Section 1186a(c)(4) provides that "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General." In its motion to dismiss, the government argues that we cannot review the BIA's denial of the waiver because 8 U.S.C. § 1252(a)(2)(B)(ii) precludes our jurisdiction over decisions within the Attorney General's discretion. Although the ultimate decision whether to grant the waiver is discretionary, we have jurisdiction to consider the legal standard for a good faith marriage and to determine whether the credited evidence meets that standard. Ibrahimi v. Holder, 566 F.3d 758, 763 (8th Cir. 2009); see also Nguyen v. Mukasey, 522 F.3d 853, 855 (8th Cir. 2008) (per curiam). Our review, however, "is limited to this legal determination and does not extend to the underlying factual determination." Ibrahimi, 566 F.3d at 764. We therefore do not "reevaluate the relative strength of the evidence." Id. at 765.

Yohannes bears the burden to prove he married in good faith, 8 U.S.C. § 1186a(c)(4), and the central issue is "whether the couple intended to establish a life together at the time they were married." Ibrahimi, 566 F.3d at 765 (quoting Damon v. Ashcroft, 360 F.3d 1084, 1088 (9th Cir. 2004)). Relevant evidence may include:

> (i) Documentation relating to the degree to which the financial assets and liabilities of the parties were combined; (ii) Documentation concerning the length of time during which the parties cohabited after the marriage and after the alien obtained permanent residence; (iii) Birth certificates of children born to the marriage; and (iv) Other evidence deemed pertinent by the director.

8 C.F.R. § 216.5(e)(2).

Yohannes concedes that he produced virtually no documentation in support of his claim of a bona fide marriage. There were no records of joint assets or liabilities,

-5-

no documents establishing that the couple cohabited for any significant length of time, and no children born to the marriage. Indeed, it is undisputed that during the early years of their marriage, Yohannes and Sharief spent substantial time apart from one another and had children with other partners.

Faced with this lack of documentary evidence, Yohannes relies on the hearing testimony and Sharief's affidavit. The IJ and BIA concluded, however, that Yohannes's testimony was not credible because of his inconsistent statements about the facts underlying his marriage. We are not free to reevaluate this credibility determination. See Ignatova v. Gonzales, 430 F.3d 1209, 1213 (8th Cir. 2005) (observing that we lack jurisdiction to review questions of fact underlying the § 1186a(c)(4) waiver). Even if we were to consider Yohannes's argument, we would not agree that the inconsistencies were minor, as they involved basic facts such as the timing of the relationship and the birth of children.

Moreover, the additional testimony was too general to provide substantial corroboration. Yohannes's brother and cousin struggled to relate specific details about the marriage, and Sharief's affidavit did not offer the type of information that would be useful to a fact-finder in evaluating Yohannes's claim. Yohannes contends that the lack of documentary evidence, factual inconsistencies, and ambiguity in the testimony are all attributable to the fourteen-year interim between his separation from Sharief and the removal proceedings. Although the exact cause of this delay is not explained in the record, Yohannes bears the burden of proof, and the regulations make no special provisions for an individual seeking a waiver many years after the events that gave rise to his petition. See 8 C.F.R. § 216.5(e). Accordingly, the BIA did not err in concluding that Yohannes was ineligible for a waiver because he failed to satisfy the legal standard for a good faith marriage.

III.

Yohannes argues that the IJ erred in requiring him to select a single ground on which to seek the § 1186a(c)(4) waiver, rather than allowing him to petition alternatively based on good faith and extreme hardship. This argument is belied by the record. Although the IJ initially expressed confusion about Yohannes's ability to seek a waiver on multiple grounds, she ultimately allowed him to present evidence to support both good faith and extreme hardship. The IJ's written opinion addressed both issues. The IJ's discussion of extreme hardship was brief, but her reasoning was sufficiently clear and supported by the evidence.[1] See 8 C.F.R. § 216.5(e)(1) ("The director shall bear in mind that any removal from the United States is likely to result in a certain degree of hardship, and that only in those cases where the hardship is extreme should the application for a waiver be granted."). The BIA did not err, therefore, in concluding that the IJ considered the issue of extreme hardship.

Finally, Yohannes contends that his due process rights were violated because the IJ demonstrated bias in favor of the government. This argument is without merit, as we have held that an alien has no constitutionally protected liberty interest in a hearing to determine eligibility for discretionary relief. Ibrahimi, 566 F.3d at 766. Moreover, the transcript yields no support for the contention that the IJ harbored bias against Yohannes.

The petition for review is denied.

_____

---

[1]Although Yohannes's brief emphasizes the hardship he will suffer due to separation from the child he fathered with Wade, we note that the record does not include a birth certificate or testimony from Wade or the child. Yohannes also expressed uncertainty about whether he would be adversely affected by the political changes in Ethiopia, should he return there.