10-2396-ag
Boluk v. Holder

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: April 11, 2011     Decided: June 7, 2011)

Docket No. 10-2396-ag

- - - - - - - - - - - - - - - - - - - -x

NEDIM BOLUK,

                   Petitioner,

          - v.-

ERIC H. HOLDER, JR., United States
Attorney General,

                   Respondent.

- - - - - - - - - - - - - - - - - - - -x

     Before:          JACOBS, Chief Judge, LEVAL and KATZMANN,
                      Circuit Judges.

     Petitioner Nedim Boluk seeks review of a final order of removal, issued after a determination that he is ineligible for a "hardship waiver" of the requirements for filing a joint petition with his citizen spouse to lift the conditions on his residency. See Immigration and Nationality Act ("INA") § 216(c)(4)(B), 8 U.S.C. § 1186a(c)(4)(B). Boluk argues on appeal that the agency erred as a matter of law by placing upon him the burden of

establishing that his qualifying marriage (which failed) was entered in good faith; that the wrong standard was applied for assessing eligibility for a hardship waiver; and that an erroneous assessment was made in weighing the evidence. The petition for review is denied.

GLENN T. TERK, Wethersfield, Connecticut, for Petitioner.

SARAH VUONG, Trial Attorney (Emily Anne Radford, Assistant Director, *on the brief*), Office of Immigration Litigation, *for* Tony West, Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, District of Columbia, for Respondent.

DENNIS JACOBS, Chief Judge:

Petitioner Nedim Boluk, who became a conditional permanent resident after marriage to a United States citizen, sought a hardship waiver of the procedures for lifting the conditions of his residency after his marriage dissolved. The immigration judge and the Board of Immigration Appeals (the "BIA") denied relief. Boluk seeks review of those decisions by this Court.

Ordinarily, the alien spouse and the citizen spouse must jointly petition for removal of the conditions on the alien spouse's residency. However, a hardship waiver of the

joint petition requirements is available if the marriage, though entered in good faith, ends in divorce prior to the point at which the alien must seek to lift the conditions on his residency. Boluk argues on appeal that the immigration judge and the BIA erred as a matter of law in placing upon him the burden of proving eligibility for a hardship waiver, in articulating the standard for demonstrating a good faith marriage, and in weighing the evidence of good faith that Boluk presented to the immigration judge.

We conclude that the allocation of the burden of proof was proper, that the agency articulated the proper legal standard for demonstrating a good faith marriage, and that the agency properly determined that Boluk was ineligible for the relief he sought. Accordingly, the petition for review is denied.

**BACKGROUND**

We recite the facts underlying this petition for review as recounted by Petitioner. In 1986, Boluk, a then-16-year-old native and citizen of Turkey, traveled to Canada to visit a relative. In Canada, he rented a boat that accidentally crossed the border and landed him in the United States "by mistake." J.A. at 100. Boluk recalls being

3

detained by immigration officials who "left [him] in some motel," where he remained for two days. J.A. at 101. He then took a bus to New York, roomed with his brother in West Haven, Connecticut, and began working at the Blue Sky Diner. J.A. at 102-03. Also employed by the diner was Ms. Karen Colangelo. J.A. at 79, 103, 106.

At first sight, Boluk "fe[lt] like [he was] in love with" Ms. Colangelo. J.A. at 79. Six or seven months later, they started dating. J.A. at 80. Boluk communicated with Ms. Colangelo with his "little English," hand gestures, and the drawing of pictures. J.A. at 106. Boluk confided his love for Ms. Colangelo, J.A. at 80, and knew she cared because she told him she "like[d]" him and "love[d]" him. J.A. at 80, 81.

In 1988, they married in Turkey. J.A. at 81. After the wedding, the couple stayed in Turkey for about a month, until Ms. Colangelo returned to Connecticut; Boluk stayed on in Turkey for about a year as he had a "hard time" procuring a visa. J.A. at 82. Upon Boluk's return to the United States in 1989 as a lawful conditional resident, J.A. at 143, Ms. Colangelo met him at the airport and was very happy to see him. J.A. at 83-84. But a "couple of days later"

4

Boluk realized Ms. Colangelo was "not happy," and she expressed resentment that he had remained so long in Turkey. J.A. at 84. At this point, Boluk learned Ms. Colangelo was using drugs; she sometimes "stayed [out] all night," sometimes never came home at all, and sometimes did not come to work. They began to have "big arguments." J.A. at 85, 86. Ms. Colangelo left Boluk in 1989, J.A. at 86-87, 93-94, and he took up with a Turkish woman (with whom he has a child who was born in the United States). J.A. at 115-16.

In 1994, Boluk filed an I-751 Petition with United States Citizenship and Immigration Services ("USCIS") to remove the conditions of his residence. J.A. at 116-17. Absent some specified ground of waiver, an I-751 Petition must be signed by both spouses attesting to a bona fide marriage. Boluk's I-751 Petition was signed jointly by himself and Ms. Colangelo, and it indicated that they were living together notwithstanding that their relationship had ended in 1989. J.A. at 119. Following submission of the Petition, an interview was scheduled by USCIS. Ms. Colangelo failed to appear. J.A. at 118. In 1998, the (purportedly) joint petition was denied by USCIS. J.A. at 143.

During the pendency of his I-751 Petition, Boluk had filed for divorce in 1996. In 2002, his divorce became final. J.A. at 118-19. That year, he again filed an I-751 Petition to remove the conditions of his residence, this time requesting a waiver of the joint filing requirements on the ground that his marriage, though ended in divorce, had been entered in good faith. J.A. at 143.

In 2006, Boluk was served with a Notice to Appear for removal proceedings, which charged him as an alien whose conditional resident status had expired. J.A. at 184. In 2007, Boluk's request for a waiver of the joint filing requirement of the I-751 Petition was denied on the ground that he failed to provide evidence to support his claim that his marriage was entered into in good faith. J.A. at 144.

Boluk appeared before an immigration judge and conceded removability, but requested relief in the form of review of the USCIS decision denying his 2002 I-751 Petition to remove the conditions on his residency. J.A. at 17-18. The immigration judge held a hearing at which Boluk testified. At this hearing, the immigration judge also received the testimony and affidavits of two individuals who had worked with Boluk, along with an affidavit of a third individual

who had occasion to observe the relationship between Boluk and Ms. Colangelo. After the hearing, the immigration judge denied Boluk's application for review of the USCIS decision and ordered Boluk's removal to Turkey. J.A. at 26. The immigration judge ruled that, pursuant to INA § 216(c)(4)(B), 8 U.S.C. § 1186a(c)(4)(B), and its implementing regulation, 8 C.F.R. § 1216.5(e)(2), Boluk had the burden of establishing that his marriage was entered into in good faith and that he failed to submit sufficient evidence of his commitment to the marriage to sustain his burden. J.A. at 24-26.

As the immigration judge observed, Boluk presented no "documentary evidence of his commitment to his wife either before or after he immigrated to the United States." J.A. at 24. The immigration judge cited facts that raised "general questions" about the bona fides of the relationship: Boluk was only sixteen when he met Ms. Colangelo; they lived together only briefly; and Boluk "did not really speak much English," making it "very unclear to the Court how [Boluk was] able to . . . effectively communicate" with Ms. Colangelo. J.A. at 24, 25. Moreover, the joint I-751 Petition submitted in 1994 presented a

7

"serious issue" and cast "serious doubt on [Boluk's] overall credibility"; Boluk could not explain how this document came to be filed when he and Ms. Colangelo were separated or why the form indicated that they were living at the same address.  J.A. at 25.

Boluk's timely appeal to the BIA argued that the immigration judge misplaced the burden of proof and had applied the wrong standard for assessing eligibility for a hardship waiver.  J.A. at 10-11.  As to burden, Boluk maintained that the statutory allocation is ambiguous and therefore should have been construed in his favor.  As to the standard for assessing eligibility, Boluk argued (in a nutshell) that the immigration judge should have focused his inquiry on the circumstances leading up to the marriage and should not have considered whether Boluk was a committed husband, or the unfortunate course of the marriage after the wedding.

The BIA dismissed Boluk's appeal.  In considering the burden of proof issue, the BIA relied on In re Mendes, 20 I. & N. Dec. 833 (BIA 1994), which ruled that "Congress chose to shift the burden of proof onto the alien to show that even though the marriage failed, it was entered into in good

8

faith." Id. at 838. The BIA agreed with the immigration judge that Boluk failed to sustain his burden of proof. J.A. at 4.

As to the standard for assessing eligibility for a hardship waiver, the BIA framed the "central question" as "whether the bride and groom intended to establish a life together at the time they were married," and reasoned that the level of commitment to the marriage thereafter had bearing on that question. J.A. at 4. As support, the BIA cited the regulation governing applications for waiver of the joint filing requirement based upon an alien's claim that a good faith marriage terminated in divorce. 8 C.F.R. § 1216.5(e)(2).

Boluk's timely petition for review renews his arguments that the immigration judge erred in placing on him the burden of establishing a good faith marriage and in articulating the standard for demonstrating a good faith marriage. Boluk also maintains that the immigration judge erred in weighing the evidence of good faith he presented.

**DISCUSSION**

**I**

"Where, as here, the BIA adopts the [immigration judge's] reasoning and offers additional commentary, we review the decision of the [immigration judge] as supplemented by the BIA." Mahmood v. Holder, 570 F.3d 466, 469 (2d Cir. 2009) (internal quotation marks omitted). We "grant Chevron deference to the [BIA's] construction of the INA." Kuhali v. Reno, 266 F.3d 93, 102 (2d Cir. 2001); see also Chevron U.S.A. Inc. v. Natural Res. Def. Council Inc., 467 U.S. 837, 842 (1984). "Under the Chevron standard, we adhere to Congress' purpose where the INA clearly speaks to the point in question," and we examine de novo questions of law decided by the immigration judge or the BIA. Kuhali, 266 F.3d at 102. When the INA "is silent or ambiguous, then we must defer to any reasonable interpretation of the statute adopted by the [BIA] as the entity charged by Congress with the statute's enforcement." Id.

**II**

This Court retains jurisdiction to review Boluk's challenge to the allocation of the burden of proof because it is a question of law whether, in a particular

circumstance, an alien bears the burden of establishing eligibility for a hardship waiver.  8 U.S.C. § 1252(a)(2)(D); see also Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 330-31 (2d Cir. 2006).  The precise issue presented here is the proper allocation of burden when the relationship through which an alien's conditional residency was obtained has ended in divorce.

Boluk contends on appeal that the INA is ambiguous as to which party bears the burden of proof on the issue of whether an alien's conditional status should be terminated for failure to establish a good faith marriage, and that this statutory ambiguity should have been resolved in his favor.  We disagree.  The statutory provision at issue is neither "silent [n]or ambiguous with respect to the specific issue" presented by this appeal.  Immigration & Naturalization Serv. v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999) (internal quotation marks omitted).  The statutory wording requires that "*the alien demonstrate*[] that . . . the qualifying marriage was entered into in good faith by the alien spouse, but the marriage has been terminated."  8 U.S.C. § 1186a(c)(4)(B) (emphasis added).  Because "the intent of Congress is clear, that is the end of the matter;

11

for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. The immigration judge and the BIA committed no error of law in allocating the burden.

This allocation of burden represents a shift. When a conditional resident petitions jointly with a citizen spouse to remove the conditions on his residency and the Attorney General determines that petition adversely, the conditional resident may request review of that determination in a removal proceeding. In such a proceeding, the burden of proof is on the government "to establish, by a preponderance of the evidence, that the facts and information [contained in the petition] are not true with respect to the qualifying marriage." 8 U.S.C. § 1186a(c)(3)(D). However, if an alien (such as Boluk) "fails to meet the requirements for timely filing a joint petition, or for jointly appearing for a personal interview, the alien may seek a waiver of these requirements," in which event the alien bears the "burden of establishing eligibility for a removal of the conditional status." Hammad v. Holder, 603 F.3d 536, 539, 543 (9th Cir. 2010); see also Hijazi v. Dep't of Homeland Sec., 239 F. App'x 629, 631 (2d Cir. 2007) (summary order) ("While the

12

[Department of Homeland Security] had the burden to show that [the petitioner] failed to meet the requirements for removal of conditions in the face of a jointly filed application, it was petitioner who bore the burden of proving his eligibility for a good-faith waiver of the joint filing requirement.").  This shift in burden helps to ensure that the marriage that provided the basis for the alien's conditional residence in the first place "was not a sham marriage" and that the marriage "had terminated for other reasons."  Krazoun v. Ashcroft, 350 F.3d 208, 209 (1st Cir. 2003); accord Ibrahimi v. Holder, 566 F.3d 758, 760 (8th Cir. 2009) (requiring alien to establish a qualifying marriage entered in good faith).  (Unpublished dispositions in other circuit courts of appeals are also in accord.[1])

    The BIA agrees in a published opinion.  Where a citizen spouse had withdrawn his support for a joint petition, the BIA reasoned that placing the burden of proof on the alien to demonstrate that the marriage was nonetheless entered into in good faith "is consistent with the statutory structure and intent."  In re Mendes, 20 I. & N. Dec. at

_____

[1] See, e.g., Roos v. U.S. Attorney Gen., 167 F. App'x 752, 755 (11th Cir. 2006) (unpublished disposition); Gaur v. Gonzalez, 124 F. App'x 738, 741-42 (3d Cir. 2005) (unpublished disposition).

13

838.  We conclude that the same is true when no valid joint petition is ever filed.  Divorce and failure to file jointly may "not necessarily demonstrate that the marriage was entered into in bad faith, . . . . [but they are] bound to raise the question as to whether that is the case."  Id. And as compared with the government, the alien is in the better position to answer that question.  Cf. Campbell v. United States, 365 U.S. 85, 96 (1961) (stating "the ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary"); United States v. Cont'l Ins. Co., 776 F.2d 962, 964 (11th Cir. 1985) (adhering "to the common law guide that the party in the best position to present the requisite evidence should bear the burden of proof"); Miles Metal Corp. v. M. S. Havjo, 494 F.2d 563, 565 (2d Cir. 1974) (allocating burden of proof to party that, "in general is in a better position" to come forward with evidence).

**III**

We have jurisdiction to review the legal question of whether the immigration judge and the BIA "applied an erroneous legal standard in making a discretionary

14

determination." Khan v. Gonzales, 495 F.3d 31, 35 (2d Cir. 2007). Accordingly, we have jurisdiction to review Boluk's contention that the immigration judge and the BIA erred by considering whether Boluk was a committed husband and by relying upon the course of the marriage subsequent to the wedding in ascertaining whether it was a good faith union at the outset. See Ibrahimi, 566 F.3d at 763.

As Boluk asserts, the "central issue is whether the couple intended to establish a life together at the time they were married." Yohannes v. Holder, 585 F.3d 402, 405 (8th Cir. 2009) (internal quotation marks omitted); see also Damon v. Ashcroft, 360 F.3d 1084, 1088 (9th Cir. 2004). However, the INA's implementing regulations specifically provide that the immigration judge may "consider evidence relating to the amount of commitment by both parties to the marital relationship" in assessing good faith:

> In considering whether an alien entered into a qualifying marriage in good faith, the director shall consider evidence relating to the amount of commitment by both parties to the marital relationship. Such evidence may include--
>
> (i) Documentation relating to the degree to which the financial assets and liabilities of the parties were combined;
>
> (ii) Documentation concerning the length of time during which the parties cohabitated

15

after the marriage and after the alien obtained permanent residence;

(iii) Birth certificates of children born to the marriage; and

(iv) Other evidence deemed pertinent by the director.

8 C.F.R. § 1216.5(e)(2); see also In re Laureano, 19 I. & N. Dec. 1, 2-3 (BIA 1983) ("The central question is whether the bride and groom intended to establish a life together at the time they were married."). The BIA has held that "[t]he conduct of the parties after marriage is relevant to their intent at the time of marriage." In re Laureano, 19 I. & N. Dec. at 3. The BIA's determination that the INA allows for consideration of the course of a relationship after a wedding in order to ascertain an alien's intent at the time he entered his marriage is entitled to deference. Kuhali, 266 F.3d at 102.

It was therefore proper for the immigration judge to attach significance to the course of the marriage post-wedding: Boluk never supported Ms. Colangelo financially; they had no joint bank account; they did not pay bills together; they signed no joint lease; and they had no children. J.A. at 95, 110. They separated soon after they had the opportunity to live together, and were then

16

divorced. Cf. In re Velarde-Pacheco, 23 I. & N. Dec. 253, 256 (BIA 2002) (concluding alien "submitted clear and convincing evidence that his marriage is bona fide" when alien submitted, among other things, his marriage certificate, his child's birth certificate, and documentation demonstrating that he had known and lived with his wife for years). If the immigration judge had failed to consider the course of the marriage, the record would consist of little more than the "bare fact of getting married," which reveals nothing regarding the "motivation for marriage." Sharma v. Holder, 633 F.3d 865, 873 (9th Cir. 2011) (internal quotation marks and emphasis omitted).

The legal standard employed was thus proper and, because our review "is limited to this legal determination and does not extend to the underlying factual determination," we do not "reevaluate the relative strength of the evidence" presented to the immigration judge. Yohannes, 585 F.3d at 405 (internal quotation marks omitted); see also Ibrahimi, 566 F.3d at 764 (determining that jurisdiction exists only to evaluate a "predicate legal question" in a challenge to an immigration judge's finding that a marriage was not entered in good faith (internal

17

quotation marks omitted)).

**IV**

Finally, Boluk challenges the immigration judge's failure to give "any weight" to the fact that Ms. Colangelo traveled to Turkey to marry him.  Pet'r Br. at 8.  The amount of weight to be accorded any particular fact raises no question of law and is accordingly not within this Court's jurisdiction to review the agency's determination. 8 U.S.C. § 1252(a)(2)(D); see Contreras-Salinas v. Holder, 585 F.3d 710, 713-15 (2d Cir. 2009).

**CONCLUSION**

For the foregoing reasons, we deny Boluk's petition for review.

18