17-1246-ag
Mazo Hernandez v. Sessions

BIA
Straus, IJ
A074 912 812
A074 910 080

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of May, two thousand eighteen.

PRESENT:
> **DENNIS JACOBS,**
> **RICHARD C. WESLEY,**
> **DEBRA ANN LIVINGSTON,**
> *Circuit Judges.*

---

**Hector Mario Mazo Hernandez, Monica Bibiana Mazo,**

> *Petitioners*,
>
> v.                                          **17-1246**

**Jefferson B. Sessions III, United States Attorney General**,

> *Respondent*.

---

FOR PETITIONERS:                   JUSTIN CONLON, Hartford, CT.

FOR RESPONDENT:                   RUSSELL J.E. VERBY, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice (with

Chad A. Readler, Principal Deputy Assistant Attorney General, and Shelley R. Goad, Assistant Director, on the brief), Washington, DC.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals ("BIA") decision, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioners Hector Mario Mazo Hernandez ("Hernandez") and Monica Bibiana Mazo ("Mazo"), natives and citizens of Colombia, seek review of the June 18, 2013 and April 7, 2017, decisions of the BIA affirming the March 26, 2012 and February 3, 2015, decisions of an immigration judge ("IJ") ordering the petitioners removed to Colombia and denying a waiver of inadmissibility. *In re Hector Mario Mazo Hernandez, Monica Bibiana Mazo*, Nos. A074 912 812/074 910 080 (B.I.A. June 18, 2013 and Apr. 7, 2017), *aff'g* Nos. A074 912 812/074 910 080 (Immig. Ct. Hartford Mar. 26, 2012 and Feb. 3, 2015). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Because "the BIA adopt[ed] the IJ's reasoning and offer[ed] additional commentary," we have reviewed the IJ's decisions "as supplemented by the BIA." *Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2007).

**1.** The petitioners were charged as removable under 8 U.S.C. §§ 1227(a)(1)(A) and 1182(a)(6)(C)(i) for misrepresenting themselves as being in bona fide marriages with their former spouses. Under those provisions, "[a]ny alien who at the time of entry or *adjustment of status*," id. § 1227(a)(1)(A), was inadmissible for seeking an immigration benefit "by fraud or willfully misrepresenting a material fact" is deportable, id. § 1182(a)(6)(C)(i) (emphasis added).

The petitioners assert that the Government was required to show that they committed marriage fraud, i.e. that they had *entered into* their first marriages to obtain immigration benefits. The Government contends that it need only have proved that the petitioners misrepresented their marriages when they petitioned to remove the conditions on their residencies under 8 U.S.C. § 1186a. The petitioners reply that the Government's position would mean that § 1227 was inapplicable because the alleged misrepresentations in removing the conditions occurred after they had adjusted to lawful permanent resident ("LPR") status under 8 U.S.C. § 1255.[1]

The Immigration and Nationality Act ("INA") does not define adjustment of status, and it could refer to the petitioners' initial adjustment under 8 U.S.C. § 1255, the removal of conditions on their residencies under 8 U.S.C. § 1186a, or both as an entire process. We decline to reach the issue. Even assuming the relevant "adjustment" was the petitioners' first change in immigration status under § 1255, the agency's determination that they misrepresented themselves as being in bona fide marriages is supported by substantial evidence.

---

[1] We deny the Government's motion to strike the reply on the basis that the petitioners' opening brief did not distinguish between obtaining LPR status and removing the conditions.

The Government must prove removability by clear and convincing evidence. *Singh v. U.S. Dep't of Homeland Sec.*, 526 F.3d 72, 78 (2d Cir. 2008). "In this context, we review factual findings by an IJ under a more demanding variation of the substantial evidence standard codified in 8 U.S.C. § 1252(b)(4)(B). Applying this standard, we may grant [the] petition only if we find that any rational trier of fact would be compelled to conclude that the proof did not rise to the level of clear and convincing evidence of" removability. *Id*. (internal quotation marks and citation omitted).

In determining whether a marriage is bona fide, the agency is entitled to rely on evidence of the "course of a relationship after a wedding in order to ascertain an alien's intent at the time he entered his marriage." *Boluk v. Holder*, 642 F.3d 297, 303-04 (2d Cir. 2011). Accordingly, circumstantial and documentary evidence of marital life in the years following a marriage goes toward showing whether a marriage was bona fide at the time of adjustment of status. *See id.* (agency properly attached significance to evidence that alien and spouse apparently never shared finances, lived together only briefly, and divorced quickly as evidence that marriage was fraudulent).

The evidence shows that as early as 1996, the petitioners were in a relationship together and not with their respective U.S. citizen spouses. In 1996, both petitioners lived in an apartment building at 205 Washington Avenue in Bridgeport. Hernandez lived in apartment B3, which he allegedly shared with his then-wife. Mazo and her first husband, Marcial Sanchez, stated that they lived in apartment A2. But Mazo's 1996 W-2 form listed her address as Hernandez's apartment, and in June 1997, Mazo gave birth to Hernandez's daughter, Dayanna.

Later evidence casts further doubt on the petitioners' representations about their relationship and on their credibility. In 1998, Mazo moved out of 205 Washington Avenue to 188 Elmwood Avenue, the same house to which Hernandez had moved. A year later, Mazo and Hernandez bought a home together. Hernandez explained that they had rushed the home purchase because he had taken a paternity test and learned he was Dayanna's father, but the DNA test did not happen until 2000.

The record also reveals several highly suspicious similarities between the petitioners' activities and backgrounds. The petitioners submitted, along with their I-751 petitions, leases that were allegedly created for different properties by different landlords. But those leases were nearly identical in format, language, and typos; for example, both leases contained the same misspelling of "liable" as "illable" and "distributees" as "disstributees." This suggests that one (or both) of the leases was not genuine. *See Mei Chai Ye v. U.S. Dep't of Justice*, 489 F.3d 517, 524 (2d Cir. 2007) ("[S]triking similarities between affidavits are an indication that the statements are canned." (internal quotation marks omitted)). In addition, the petitioners were both originally from Medellin, Colombia, and both traveled to Colombia from December 1997 to January 1998. Though the petitioners claimed to have traveled separately, Mazo acknowledged that she had made the trip, in part, to have Dayanna baptized. Finally, although both petitioners held joint bank accounts with their former spouses, the accounts were at the same bank; the petitioners also both

used the same doctor for immigration-related physicals and the same notary and translator for their documents.

The petitioners point to their own testimony to show that their marriages to their former spouses were genuine. But inconsistencies in that testimony reflect poorly on their credibility. *See Siewe v. Gonzales*, 480 F.3d 160, 170-71 (2d Cir. 2007) ("[A] single false document or a single instance of false testimony may (if attributable to the petitioner) infect the balance of the alien's uncorroborated or unauthenticated evidence."). The petitioners note that their friend, America Geraldino, testified that Mazo's marriage to Sanchez was genuine, but that evidence alone would not compel a reasonable fact finder to conclude that the government presented insufficient proof to meet its burden. *See Singh*, 526 F.3d at 78.

The petitioners assert that the evidence against them does nothing more than raise doubts about the bona fides of their first marriages, and doubts do not constitute clear and convincing evidence. But given that the evidence shows that the petitioners were in a relationship as early as 1996 and made willful misrepresentations relating to their addresses and marital status, the agency's determination of removability is sufficiently supported by the record. *Id.*; *see also Boluk*, 642 F.3d at 303-04 (evidence of lack of shared marital life goes toward showing a sham marriage).

**2.** The petitioners sought a waiver under 8 U.S.C. § 1227(a)(1)(H), which permits the Attorney General to waive inadmissibility if the alien was inadmissible only because of misrepresentations and is the parent of a U.S. citizen child. Our jurisdiction to review the agency's discretionary denial of this waiver is limited to constitutional claims and questions of law, which we review de novo. 8 U.S.C. §§ 1252(a)(2)(B), (D); *Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir. 2009).

The petitioners argue that the agency violated the law of the case doctrine by reweighing the equities on remand. Specifically, they argue that the agency was bound by the IJ's statement that the case was a "close call" and, thus, that the agency was subsequently compelled to grant a waiver because the new evidence on remand was all in their favor. This argument fails.

"The law of the case doctrine commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks and citation omitted). But the doctrine does not apply to dicta. *See Schwabenbauer v. Bd. of Educ. of City Sch. Dist. of City of Olean*, 777 F.2d 837, 841-42 (2d Cir. 1985) (holding that law of the case did not apply to dictum contained in a prior opinion's footnote). The IJ's initial legal conclusion was to deny the waiver because the negative equities outweighed the positive ones. The "close call" language was not a legal conclusion to which law of the case may attach. The IJ therefore did not commit an error of law by reweighing the equities on remand.

4

We have considered the petitioners' remaining arguments and find them to be without merit. For the foregoing reasons, the petition for review is **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court