**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 17-1292 and 17-3217
_____

ALI FARES SAMARA,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petitions for Review of Orders of the
Board of Immigration Appeals
(BIA No. A078-492-776)
Immigration Judge: Honorable Rosalind K. Malloy
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 15, 2018
_____

Before: GREENAWAY, JR., BIBAS, and FUENTES, *Circuit Judges.*

(Opinion Filed: January 29, 2019)
_____

OPINION *
_____

---

    * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Petitioner Ali Fares Samara ("Samara") challenges a final order of removal of the Board of Immigration Appeals ("BIA"). In support of his challenge, Samara raises three arguments. However, the first two arguments fail and the last is beyond this Court's jurisdiction. We will therefore deny in part and dismiss in part Samara's petitions for review.

## I. BACKGROUND

Samara, a native of Jordan, came to the United States at the age of 34. Although he entered the country legally, pursuant to a B-1 visitor visa, he unlawfully overstayed his visa and began working at a convenience store in Philadelphia. Nearly three years later, Samara married Rose Marie Martelli ("Martelli"), a United States citizen. Based on this marriage, Samara received conditional lawful permanent resident ("CLPR") status.

Soon, Samara and Martelli jointly filed a Form I-751: Petition to Remove the Conditions on Residence ("I-751"). Following an interview with Samara and Martelli, however, the United States Citizenship and Immigration Services ("USCIS") found that their marriage was fraudulent and denied their I-751. Samara and Martelli filed a motion to reopen the termination of their I-751 but that motion was also denied.

A few years later, Samara filed a second I-751 on his own. This time, he requested a waiver of the joint petition requirement on the grounds that, although he had entered into his marriage with Martelli in good faith, it had terminated through divorce or annulment. Following another interview, USCIS again concluded that Samara and Martelli's marriage was a sham and memorialized its findings in an investigative report

2

drafted by Officer David Spaulding. As a result, USCIS denied Samara's second I-751, thus terminating his CLPR status.

Based on these developments, the United States Department of Homeland Security commenced removal proceedings against Samara, beginning with a Form I-862: Notice to Appear ("NTA"). The NTA charged Samara with removability under sections 237(a)(1)(A) and 237(a)(1)(D)(i) of the Immigration and Nationality Act of 1965 ("INA"), 8 U.S.C. § 1227(a)(1)(A) & (D)(i), based on marriage fraud and termination of his CLPR status, respectively. Samara admitted to all allegations in the NTA, except the allegation that his marriage to Martelli was a sham.

After reviewing the record and conducting a merits hearing, at which Samara testified, an immigration judge ("IJ") issued a 19-page decision chronicling her findings and conclusions. The decision highlighted a host of information detrimental to Samara, including that Samara and his Jordanian ex-wife, whom he had allegedly divorced before marrying Martelli, conceived a child and traveled internationally together after their alleged divorce; Samara did not date or live with Martelli as long as he had originally stated; Samara fathered a child with another woman while married to Martelli and withheld this information in his I-751 proceedings; Samara presented false documents and potentially used an imposter to pose as Martelli at the first USCIS interview; and Samara paid Martelli lump sums every month.

Upon finding that Samara's testimony was "rife with inconsistencies" and even "implausible," the IJ determined that Samara's testimony warranted an adverse credibility finding. App. 24–25. The IJ then concluded that, even in the absence of the

3

adverse credibility finding, Samara did not warrant a good faith marriage waiver because he had not demonstrated that he and Martelli commingled assets, assumed joint liabilities, or cohabitated after marriage; they did not have any children during their marriage; and ample evidence indicated that Samara had married Martelli for immigration benefits. As a result, the IJ denied Samara's good faith marriage waiver application, terminated Samara's CLPR status, and ordered that Samara be removed to Jordan.

Initially, Samara appealed the IJ's decision to the BIA. The BIA, however, fully affirmed the IJ's decision and dismissed Samara's appeal. A few months later, Samara filed a motion to reopen and remand before the BIA, seeking to adjust his immigration status based on his new marriage to Nehayah Saleh ("Saleh"), a United States citizen. The BIA denied the motion, concluding that a new petition based on Samara's marriage to Saleh was "likely precluded" under section 204(c) of the INA, 8 U.S.C. § 1154(c), given his prior sham marriage to Martelli. App. 7 (citation omitted).

Before us, Samara now timely appeals both of the BIA's decisions—(1) its dismissal of his appeal of the IJ's denial of his application for a good faith marriage waiver (the "First Decision") and (2) its denial of his motion to reopen and remand (the "Second Decision")—in a consolidated action. For the reasons set forth below, however, we will deny in part and dismiss in part his petitions for review.

## II. JURISDICTION AND STANDARD OF REVIEW

The IJ had authority to consider Samara's good faith marriage waiver under 8 U.S.C. § 1186a(c)(4)(B). The BIA had jurisdiction to consider Samara's appeal of the

4

IJ's decision under 8 C.F.R. § 1003.1(b)(3). It further had jurisdiction to consider Samara's motion to reopen and remand under 8 C.F.R. § 1003.2(a).

Our jurisdiction arises under 8 U.S.C. § 1252(a)(1). We typically review the BIA's opinion as a final agency decision, but where, as here, the BIA "invokes specific aspects of the IJ's analysis and fact-finding," we review both decisions. *Green v. Att'y Gen.*, 694 F.3d 503, 506 (3d Cir. 2012) (citing *Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir. 2005)). While we lack jurisdiction to review, like here, the agency's discretionary decision to deny a good faith marriage waiver application, 8 U.S.C. § 1252(a)(2)(B)(ii), we retain jurisdiction to address constitutional and legal issues, *id.* § 1252(a)(2)(D). We review such constitutional and legal issues *de novo* but give deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to the agency's interpretation of the INA. *Green*, 694 F.3d at 506 (citing *Sarango v. Att'y Gen.*, 651 F.3d 380, 383 (3d Cir. 2011)).

### III. DISCUSSION

On appeal, Samara raises three arguments as to why this Court should reverse the BIA's decisions: the BIA erred by affirming (1) the IJ's application of an overly burdensome legal standard; (2) the IJ's consideration of the USCIS report; and (3) the IJ's reliance on Martelli's hearsay and credibility. Because the first two arguments are unavailing and the last touches on matters beyond this Court's jurisdiction, we will deny in part and dismiss in part Samara's petitions.

5

**A. Samara Has Waived Any Claim Regarding the Second Decision**

As a preliminary matter, Samara purports to appeal via this consolidated action both the First Decision and the Second Decision. Indeed, his first petition for review refers to the First Decision and his second petition for review refers to the Second Decision. But his opening brief fails to address any aspect of the Second Decision. Accordingly, he has waived any claim regarding the Second Decision and we therefore decline to address it. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (citations omitted).

**B. The IJ *Applied* the Correct Legal Standard**

Notwithstanding the jurisdictional bar to our reviewing the BIA's factual or discretionary determinations, we still retain jurisdiction over any constitutional claims or questions of law. *Sukwanputra v. Gonzales*, 434 F.3d 627, 633–34 (3d Cir. 2006) (citations omitted). Samara's first argument raises a question of law: that the IJ applied an overly burdensome legal standard in evaluating his application for a good faith marriage waiver. *See Fadiga v. Att'y Gen.*, 488 F.3d 142, 153–54 (3d Cir. 2007) (citations omitted) (noting that whether an agency applies the correct legal standard is a question of law).

In particular, Samara avers that the IJ improperly applied—and the BIA erred in affirming the IJ's application of—an overly stringent "heavy burden of proof" standard. Pet.'s Br. 9. (quoting App. 24–25). The alleged error stems from a sole sentence in the IJ's 19-page decision, where she stated the legal standard applicable when a petitioner has previously withdrawn a prior visa petition based on an admission of fraudulent

6

marriage. *See* App. 24 (citing *Matter of Laureano*, 19 I. & N. Dec. 1 (BIA 1983)). Here, *Laureano* is inapposite for two reasons: (1) Samara's first petition was denied by USCIS, not withdrawn by him; and (2) Samara's first petition yielded a determination by USCIS that the marriage was fraudulent, not such an admission from Samara or Martelli. Instead, Samara should have been held to a "preponderance of the evidence" standard. *E.g.*, *Boluk v. Holder,* 642 F.3d 297, 302 (2d Cir. 2011) (citation omitted); *Lara v. Lynch*, 789 F.3d 800, 804 (7th Cir. 2015); *Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1148 (9th Cir. 2005).

Samara first raised this argument in his appeal to the BIA. But the BIA squarely addressed and rejected it. Though it acknowledged that the IJ indeed *stated* "heavy burden" instead of mere "burden," the BIA still affirmed the IJ's decision, reasoning that she nonetheless *applied* the correct legal standard. App. 4. In doing so, the BIA explained that, as to the dispositive question of whether Samara and Martelli intended to establish a life together upon marriage, the IJ correctly denied Samara's good faith marriage waiver application.

Now before us, Samara essentially seeks to relitigate the BIA's disposition of this same argument. But the BIA did not err in affirming the standard applied by the IJ. As the BIA itself explained, although the IJ may have misstated the legal standard, she applied the correct one, evidenced chiefly by her citations to, and reliance upon, cases employing the correct standard. In other words, the IJ's only error was one of nomenclature, not application. Especially in light of the overwhelming evidence in the record that supports the IJ's finding that Samara's marriage to Martelli was a sham, we

7

deem such error of nomenclature to be harmless where, as here, the application was correct and it is thus highly probable that the error did not affect the outcome of the case. *See Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 427 (3d Cir. 2011) (citations omitted); *see also Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 402 (2d Cir. 2005) (stating that remand is unnecessary "where the IJ or BIA's reliance on an erroneous aspect of its reasoning is so tangential that there is no realistic possibility that the outcome would be different on remand" or "where—notwithstanding admitted errors—overwhelming evidence supporting the administrative adjudicator's findings makes it clear that the same decision would have been reached in the absence of the errors" (citations omitted)). Samara's argument is therefore futile.

### C. Samara Cannot Show the IJ's Consideration of the USCIS Report Substantially Prejudiced Him

Samara next argues that the BIA erred in affirming the IJ's decision because the IJ improperly considered the USCIS investigative report drafted by Officer Spaulding that speculated, in a parenthetical, that an imposter may have posed as Martelli in an interview. More specifically, Samara claims that the IJ's consideration of the report constitutes a due process violation because he did not have an opportunity to cross-examine Officer Spaulding. Such due process claims are, of course, constitutional in nature and thus within our jurisdiction. *Singh v. Gonzales*, 432 F.3d 533, 537 (3d Cir. 2006).

Due process in the context of an immigration hearing requires that individuals "threatened with deportation are provided the right to a full and fair hearing that allows

8

them a reasonable opportunity to present evidence on their behalf." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir. 2003) (citation and internal quotation marks omitted). In particular, due process requires that such an individual: (1) is entitled to fact-finding based on a record produced before the decision maker and disclosed to her; (2) must be allowed to make arguments on her own behalf; and (3) has the right to an individualized determination of her interests. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (citations and quotations omitted).

Here, however, we need not decide whether the agency erred in considering the USCIS report without giving Samara an opportunity to cross-examine Officer Spaulding. Even assuming error, Samara must still show substantial prejudice in order to prevail on his due process claim. *See Singh*, 432 F.3d at 541 (citing *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005)). But he cannot do so.

Although the IJ indeed discussed the contents of the USCIS report in her recitation of the documentary evidence in the record, she only relied on it in a sole paragraph among the nearly five pages of her decision devoted to her findings. Moreover, that paragraph appeared only in her analysis of why Samara deserved an adverse credibility finding. As to the dispositive question of whether to grant Samara's good faith marriage waiver application, the IJ explicitly stated that, "even absent [her] adverse credibility finding," Samara did not demonstrate that he warranted a waiver. App. 26. The BIA did not even mention, much less rely on, the USCIS report in affirming the IJ's decision.

In light of the overwhelming record evidence that supports the IJ's finding that Samara's marriage to Martelli was a sham, we cannot discern any prejudice—much less

9

substantial prejudice—by virtue of the USCIS report's inclusion in the record. Because Samara cannot show such prejudice, his due process argument is unavailing.

### D. We Lack Jurisdiction to Address the Agency's Weighing of the Evidence

Samara's third argument concerns the IJ's evaluation of the evidence. In particular, he contends that the BIA erred in affirming the IJ's decision because she improperly weighed Martelli's testimony and evidence of lump sum payments. But we have consistently held that "arguments such as that an [IJ] or the BIA incorrectly weighed evidence, failed to consider evidence[,] or improperly weighed equitable factors are not questions of law" subject to judicial review. *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir. 2007). Thus, we lack jurisdiction to address this argument. *See Sukwanputra*, 434 F.3d at 634 (citations omitted).

### IV. CONCLUSION

For the foregoing reasons, we will deny in part and dismiss in part Samara's petitions for review.